HOOKWAY v. McKNIGHT.

In re McKNIGHT LAND CO.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1916.)

No. 4567.

FRAUDULENT CONVEYANCES ☞57(4)—WHAT CONSTITUTES.

- Where a creditor of a solvent corporation agreed to take preferred stock under an express stipulation that it should be redeemed within a given time, a conveyance of lands by the corporation, which was then solvent, to redeem the stock, is not fraudulent, though the corporation thereafter through bad investments became insolvent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 150–152, 154; Dec. Dig. ☞57(4).]

Appeal from the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge

Suit by C. W. Hookway, as trustee of the McKnight Land Company, bankrupt, against E. V. McKnight. From a judgment for defendant, plaintiff appeals. Affirmed.

G. W. Twiford, of Minot, N. D., and Daniel B. Holt, of Fargo, N. D. (Edward Engerud and John S. Frame, both of Fargo, N. D., and R. H. Bosard, of Minot, N. D., on the brief), for appellant.

E. T. Conmy, of Fargo, N. D. (J. S. Watson and N. C. Young, both of Fargo, N. D., on the brief), for appellee.

Before ADAMS, Circuit Judge, and REED and ELLIOTT, District Judges.

ADAMS, Circuit Judge. On September 15, 1913, the McKnight Land Company, a corporation of North Dakota, was by the District Court of the United States for the District of North Dakota adjudicated a bankrupt, and C. W. Hookway was duly chosen its trustee. He brings this suit in equity against E. V. McKnight to rescind a contract of sale or transfer of land made by the bankrupt corporation to him on December 20, 1911, on the alleged ground that it was made with intent to defraud the creditors of the Land Company.

The testimony tended to show the following main facts: In 1907 the appellee and his two sons, Roy and John, organized a land corporation to deal in lands, with an authorized capital of $50,000, of which $12,000 only was then issued. E. V. McKnight, the appellee, subscribed and paid for $4,000 of the stock, and the two sons, Roy and John, subscribed each $4,000, and gave their notes to the corporation for that amount. The appellee later purchased and paid for $1,000 worth more of the stock of the company. In 1909 the appellee, being about to remove to California to reside there, sold his stock in the Land Company and some other stock owned by him, known as the "Hurd bank stock," to the corporation, for $13,125, and took the notes of the corporation in that amount for the purchase price. In June, 1910, the articles of incorporation of the Land Company were so amended as to permit the issuance of preferred stock by it and to provide for its redemption at any time after one year from its issuance.

Afterwards the appellee, being then an acknowledged and rightful creditor of the company for $8,000, balance due on account of the stock sold by him to it, and $15,000 in money loaned by him to it, and holding the note of the corporation for the aggregate amount so due him of $23,000, at the solicitation of his sons agreed to surrender his note and take preferred stock of the corporation, of the par value of $23,000, provided the corporation would agree to redeem it at par on December 1, 1911. This was assented to by the corporation, and the note was surrendered, and a corresponding amount of preferred stock issued to him. When the period fixed for redemption of the preferred stock held by appellee, namely, December 1, 1911, arrived, the corporation assigned to him certain valuable contracts for the purchase of school lands from the state of North Dakota at a valuation fairly and reasonably equivalent to the face value of the stock so acquired and held by him, and this was received by the appellee in lieu of money originally agreed to be paid. At the time the agreement to surrender his notes by the appellee was made and performed, and the preferred stock was accepted by him, the corporation was solvent and in a first-class financial condition, but afterwards, by reason of improvident ven-

tures, bad crops, and misfortunes of one kind and another, insolvency and bankruptcy ensued.

There was no evidence that there was any reasonable ground to contemplate insolvency or bankruptcy at the time the appellee and the corporation entered into the arrangement to exchange the note for the preferred stock. On this and other evidence, not substantially contradicting this, the learned trial judge dismissed the bill, saying, amongst other things:

"At the time of this preferred stock transaction, in exchange for the cash, and the equivalent of cash which the Land Company then received, that company agreed to redeem the stock by the payment of the face value thereof, with interest at 8 per cent. on December 1, 1911, if the defendant, E. V. McKnight, should so desire. At the time the company was perfectly solvent, the transaction was made in entire good faith; it was a contract which the Land Company had authority to make, and was in fact a simple loan with an agreement on the part of the Land Company to repay the loan on December 1, 1911, with interest. The lands sought to be recovered in this suit were turned out to E. V. McKnight in payment of the obligation of the Land Company created by this loan. Such payment in land was just as valid as a payment in cash would have been. I hold the payment to have been valid in all respects."

This finding of fact was presumptively correct. Moreover, after an independent consideration of the evidence and arguments of counsel, we are of opinion that the trial court was clearly right in the view it took of the case. It seems to us that the essence of the transaction between the appellee and the Land Company was that the appellee, being a bona fide creditor of the Land Company in the sum of $23,000, accepted the stock practically as collateral security for the payment of that debt at the time fixed. There was no evidence that McKnight desired the stock of the company as an investment. On the contrary, he was about leaving North Dakota, where he had resided with his boys for a long time, and to take up his residence in California, and all the testimony points to this conclusion that he desired to convert his holdings of stock in North Dakota into cash, and that he never intended to accept the stock in full discharge of his debt. He did accept it with the agreement that the face value of the stock, which was the equivalent of the debt, should be refunded to him on the 1st of December, 1911.

There is no pretense that the transaction between E. V. McKnight and the bankrupt amounted to any unlawful preference under the bankruptcy law to Mr. McKnight. The basis of the suit is that the contract was void under the statute of North Dakota concerning fraudulent conveyances. Finding no fraud to have been practiced upon the Land Company in the transaction, and that there was no intent to hinder, delay, or defraud creditors by the transaction, the decree of the District Court must be affirmed.